## BAILEY v. ORANGE NAT. BANK et al.

District Court, D. New Jersey.
March 22, 1939.

Gerald W. Kolba, of Newark, N. J., for plaintiff.

Edward L. Davis, of Orange, N. J.; for defendant.

FAKE, District Judge.

The issues here arise on a motion to strike the complaint on the ground that it discloses no cause of action.

It is alleged in the complaint that the defendant bank was closed by Presidential proclamation on March 4th, 1933. That on the 18th, 21st, 22nd, 23rd, 24th and 28th of March, 1933, the bank through its officers and agents caused certain advertisements to be published in the Newark Evening News, copies of which are annexed.[1] Plaintiff seeks judgment for the value of said advertising.

A reading of the aforesaid advertisements discloses that they were all directed toward the conservation of the assets of the bank and the welfare of all parties in interest. They appeared at a time of great economic disaster, when men feared the collapse of our entire economic system and they disclosed an earnest endeavor on the part of the officers of the bank to prevent a condition of chaos and as well to reinforce any weakness which might be disclosed in the bank's financial structure.

It is urged by the receiver that when the bank closed on March 4th, 1933, pursuant to Presidential proclamation, the officers of the bank were stripped of all power to obligate the bank or cause its assets to be liable on their contractual commitments.

It appears that a conservator was appointed for the bank on the 25th of March, 1933, and thereafter on December 1st the defendant receiver was appointed and he has proceeded with the liquidation of the bank's assets pursuant to statute.

On March 6th, 1933, a Presidential proclamation was issued wherein, after reciting that heavy withdrawals of gold and currency were being made for hoarding purposes against the best interests of bank depositors, a bank holiday was ordered from March 6th to March 9th inclusive and provided that "during said period all banking transactions shall be suspended. During such holiday, except as hereinafter provided, no such banking institution or

---

[1] Schedule "A"—1
March 18, 1933 (112 Lines)

The Orange National Bank, its officers, directors and clerks, wish to express their sincerest appreciation and gratitude to its depositors and friends for their loyal and generous support during this critical period.

With the greatest optimism we are looking forward to the future of your Bank and we pledge ourselves to preserve and maintain with unrelenting effort the high traditions of the past.

Orange National Bank

Schedule "A"—2
March 21 and 22, 1933 (294 Lines each)

It is of the utmost importance to the depositors of the Orange National Bank that they call at the Bank as soon as possible. The bank will be open every day and every evening this week and officers will be available to give individual attention to the Preferred stock Issue being sold at this time.

Signed
Orange National Bank

Schedule "A"—3
March 23 and 24, 1933

Depositors of this Bank are requested to confer with our officers at once regarding their deposits and the Preferred Stock Issue as approved by the Comptroller of Currency.

Orange National Bank
Orange, N. J.
Member Federal Reserve System
Open from 8 A. M. to 10 P. M.

branch shall pay out, export, earmark or permit the withdrawal or transfer in any manner or by any device whatsoever of any gold * * * or transact any other banking business whatsoever." On March 9th, 1933, a further Presidential proclamation extended the preceding proclamation until further proclamation by the President.

■ The specific issue with which we are here concerned bears upon the interpretation to be given the terms "banking transactions" and "banking business." It would seem that these terms should be given their usual and generally accepted meaning and should not be liberally construed except insofar as applicable to the specific purposes of the proclamation in preventing the evils therein sought to be avoided. Obviously, these proclamations did not intend that officers and agents of banks should desert their respective institutions, thus abandoning them in the midst of the financial storm. Nothing in the proclamation relieved the officers of banks from doing all in their power to protect their institutions from needless loss.

This then calls for a critical analysis of the advertisements in suit.

The advertisement of March 18th, 1933, when boiled down, expresses the appreciation of the bank and its officers to its depositors and friends for their "generous support during this critical period" expresses optimism as to the future and pledges the officers to unrelenting efforts in behalf of all concerned. All of which raises a question of fact as to whether or not in view of the then prevailing conditions the officers of the bank exercised reasonable discretion in thus publishing their attitude to the world, and whether or not it tended to conserve the assets of the bank.

The advertisement of March 21st and 22nd, 1933, notified depositors that it was of importance for them to call at the bank. Informing them that the bank would be open every day and every evening for the purpose of conferring with them with respect to preferred stock of the bank then being sold. I assume that this was being done in an honest and careful endeavor to save the bank as a going concern, and here again a question of fact is raised as to whether or not it tended logically to allay the national emergency and thus conserve the bank's assets.

The advertisements of March 23rd and 24th are to the same effect as those last above dealt with except that they go one step farther in stating that the preferred stock issue was approved by the Comptroller of the Currency.

The advertisements of March 28, 1933, cannot be edited without damage to their substance. They read as follows:

March 28, 1933—Schedule "A"—4

"The undersigned Banks comprising the membership of the Clearing House of the Oranges as well as the Independent Savings Banks are in entire sympathy with the efforts of the Officers of the Orange National Bank to reestablish on a firm basis the assets of one of the oldest institutions in the Oranges.

"We believe the Bank should have the encouragement of the entire community in meeting the Government's requirements as to additional capital and it is our feeling that such requirements can only be accomplished by the combined efforts of their stockholders and depositors in subscribing for the additional stock thus saving what might be a serious loss to the various individuals, institutions and municipalities whose funds on deposit with that institution are at present unavailable.

"Second National Bank of Orange
"Half Dime Savings Bank, Orange
"Orange Savings Bank
"Trust Company of Orange
"First National Bank of West Orange
"Savings Investment and Trust Company
"Essex County Trust Company
"East Orange Trust Company and South
        Orange Trust Company"

March 28, 1933—Schedule "A"—5

"To Our Depositors

"The Directors of this Bank desire to announce that, at the close of Monday night, March 27, one week since the beginning of the present Preferred Stock Issue campaign, more than $500,000.00 had already been subscribed.

"Depositors who have not yet been interviewed will make possible the early announcement that all banking restrictions have been removed by calling at the Bank at their first opportunity.
        "Orange National Bank
        "Orange, New Jersey
    "Member Federal Reserve System
    "Open from 8 A. M. to 10 P. M."

Here again issues of fact are raised bearing upon the question as to whether or not these advertisements tended logically and truthfully to allay unwarranted fears.

underlying the state of emergency and tended to conserve the assets of the bank.

■ Sight should not be lost of the trust relationship which hung heavy upon the shoulders of the officers and directors of the bank. This called upon them to exert themselves to conserve the assets of the bank by every reasonable means which they as prudent men might find at hand. Neither the Presidential proclamation nor the statutory law relieved them of this burden, and to hold that they could not burden the trust estate with such items as were reasonably necessary to conserve the res would be to penalize the wise and prudent trustee and encourage slothfulness, irresponsibility, and cowardice in that relationship.

The motion to strike the complaint is denied.